(130 So. 341)

**POLICE JURY OF PARISH OF TERREBONNE v. UNITED STATES FIDELITY & GUARANTY CO. OF BALTIMORE, MD.**

No. 27534.

July 2, 1930.

Rehearing Denied Oct. 7, 1930.

See, also, 130 So. 344.

Wurzlow & Watkins, of Houma, for appellant.

Spearing & Mabry, of New Orleans, and Ellender & Ellender, of Houma, for appellee.

OVERTON, J.

This is a suit to recover from defendant, as surety on the bond of D. V. Johnston Company, Inc., $9,103.81, with legal interest thereon from judicial demand, for the failure of the Johnston Company to deliver to plaintiff certain gravel, freight prepaid, for which plaintiff had paid the Johnston Company, and for freight paid by plaintiff for that company on gravel actually delivered by it to plaintiff.

The contract, under which the bond was executed, and to secure the performance of which the bond was furnished, was entered into on June 14, 1921. The bond was signed by defendant four days later. The contract for the delivery of the gravel contains a clause, reading as follows: "Said gravel is sold and is to be delivered for the price and sum of two dollars and seventy-four cents per yard of twenty-seven hundred · pounds, or for the aggregate sum of twenty-four thousand, six hundred and sixty dollars, cash in hand herewith paid, the receipt of which is hereby acknowledged by party of the first part (the Johnston Company) and due acquittance given for the same."

The main defense is that, in signing the bond as surety for the faithful performance of the contract, defendant relied upon the truth of the statement contained in the contract that the consideration moving to the Johnston Company had been paid in cash, when, as a matter of fact, it had not been so paid, but that, on the day the contract was entered into, another contract was signed by the same parties, under which, instead of paying the consideration to the Johnston Company in cash, plaintiff delivered to it 49 bonds of road district No. 4 of the parish of Terrebonne of the par value of $24,500, which were later sold by the Johnston Company for $17,150, and that defendant's lack of knowledge of the consideration actually paid, and its misplaced reliance upon the truth of the recital contained in the contract, caused it to sign the bond in error, and that therefore the bond never had any validity, force, or effect, and never was a valid or subsisting obligation.

The evidence shows, as we have said, that the contract for the purchase and delivery of the gravel recites that the consideration therefor was paid in cash. It also shows that, on the same day that the contract for the purchase and delivery was made, plaintiff and the Johnston Company entered into another contract by which plaintiff sold at private sale to the Johnston Company 49 bonds of road district No. 4 of the parish of Terrebonne, of the par value of $24,500, for a recited consideration of $24,500, cash in hand paid. The evidence also shows that on July 18, 1921, the Johnston Company, having learned that it did not acquire a valid title to the bonds, because it purchased them at private sale, entered into another agreement with plaintiff, purporting to rescind the contract which recites that the Johnston Company purchased the bonds for $24,500 cash, though at the same time the Johnston Company binding itself not to demand the cash return of the recited purchase price, but in lieu thereof to accept such price as the bonds might bring at public sale, in full payment for the annulment, up to par value and accrued interest, the excess, if any, to go to plaintiff, and if the bonds failed to bring par and accrued interest at the first offering, other offerings were to be made, at the expense of the Johnston Company, until the bonds did bring such price. The evidence also shows that, on the same day the contract pur-

porting to rescind the sale of the bonds was entered into, the Johnston Company and N. H. Polmer, a resident of the parish of Terrebonne, entered into a contract by which it was agreed that the Johnston Company would sell the bonds to Polmer, for $17,150, in the event they were adjudicated to the company at the auction sale, and in the event the validity of the bonds and the sale were approved by competent counsel. In this contract it also appears that, on the day of its execution, all of the bonds were held in pledge by a bank to secure an indebtedness of $10,000 due by the Johnston Company to the bank, and that, to avoid the possibility of the bonds being sold by the bank to satisfy the indebtedness, Polmer bound himself to take steps immediately to pay the indebtedness due the bank. It also appears in this contract that, notwithstanding the rescission of the contract whereby it appears that the Johnston Company purchased the bonds from plaintiff, made on the same day as the present contract, the Johnston Company bound itself to permit Polmer to hold the bonds as security for the payment to be made by it, on Polmer's making the payment, the bonds to be returned by Polmer to the Johnston Company, should this become necessary to perfect the title. In this contract it further appears that the balance of $7,150 on the purchase price of the bonds was to be paid upon its appearing that the bonds were valid and that the Johnston Company had obtained a valid title to them.

The foregoing sale between the Johnston Company and Polmer was consummated. After its consummation, the delivery of the gravel was proceeded with, but after a good part of it had been delivered, the Johnston Company defaulted, and later went into the hands of a receiver.

We find no serious difficulty in determining that the practical effect of the two contracts entered into on June 14, 1921, was the giving of the bonds by plaintiff to the Johnston Company as the consideration for the purchase and delivery of the gravel. Nor do we find any serious difficulty in determining that the rescission of the contract of sale of the bonds by plaintiff to the Johnston Company and the auction that followed were accomplished to perfect the Johnston Company's title to the bonds, and that the bonds throughout, to all practical effect, were the true consideration for the gravel delivered.

We do not find, however, that when plaintiff inserted, or approved of the insertion, in the contract for the purchase of the gravel that the consideration was cash in hand paid, it had any intention to defraud defendant or in any manner impose upon it. As the Johnston Company offered to purchase the bonds to enable plaintiff to accomplish the purpose for which the bonds were issued, and as it also desired to sell plaintiff gravel, delivered, to enable it to accomplish that purpose, both parties likely viewed both contracts as sales, and so wrote them.

However, while there was no intention on plaintiff's part to defraud or impose upon defendant, nevertheless the insertion in the contract, without any explanation whatever, of a consideration which, in reality, did not exist, was clearly susceptible of imposing upon defendant, by causing it to believe that the company which asked it to sign as surety had been paid in cash, when in reality the real consideration was road bonds.

While the contract, in this instance, was one to enable plaintiff to construct a public work, it was not one for the construction of a public work, nor for a private work. It was not one for the construction of any

work, but was one merely for the purchase and delivery of gravel.

 Therefore the contract is not governed by Act No. 224 of 1918, which governs contracts for the construction of public works, nor is it governed by any act relative to the construction of private works, nor is the bond given under the present contract governed by those acts. The bond, in this instance, is governed, so far as relates to the rights of the surety, by the ordinary rules of suretyship. Under these rules, in our view, the recital in the contract for which the bond was given, that the consideration was cash in hand paid, when in reality it was not, changes the contract to such an extent from the one actually existing as to relieve the surety from liability to plaintiff, who, it may be repeated, was in part responsible for the misstatement.

It may well be that defendant would not have signed the bond as surety had it known that the consideration was not what it was represented to ·be in the very contract that it was asked to guarantee the performance of, for how the consideration is to be paid, or how it has been paid, is frequently a material matter for the surety. That the mode of payment was material here is obvious from the fact that the Johnston Company, shortly after the surety signed, sold the bonds at a discount of 30 per cent. or more, and not so very long thereafter went into the hands of a receiver.

·So far as appears, defendant knew nothing of the misstatement as to the consideration until after this suit was filed.

The trial court rendered judgment for defendant. The judgment should be affirmed.

The judgment appealed from is affirmed.

THOMPSON, J., dissents.